**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Surinder Kalra, | ) | Bankr. No. 24-08259 |
| | ) | |
| Debtor. | ) | Chief Judge Jacqueline P. Cox |

**Amended Memorandum Opinion on Motion to Bar Discharge (Dkt. 70)**

Before the court is the Chapter 13 Trustee's Motion to Dismiss Chapter 13 Case With

One Year Bar to Refiling and Permanent Bar to Discharge. For the reasons noted herein the

Motion will be granted, in part. The case will be dismissed with a permanent bar to discharge of

existing debts.

**Background**

On May 11, 2022, Surinder Kalra, (the "Debtor") purchased a residence at 1610 Marion

Street, Roselle, Illinois for $860,000. On July 22,2022, the Debtor transferred the residence **to**

the Aragon 2022 Revocable Living Trust; the Debtor was its trustee. On April 11, 2023, as

trustee of the Aragon 2022 Revocable Living Trust, he quit-claimed the Roselle residence to his

spouse, Harpreet Kalra. Harpreet Kalra is not a debtor herein.[1] The Debtor remains married to

his spouse and resides at the Roselle property.

---

[1] The Debtor's Response pleading states that this was the Debtor's one and only bankruptcy case. Docket 90, p. 10 ("Here, the Debtor has had one and only bankruptcy case . . . ."). In contrast, he testified at the hearing that he filed for chapter 7 bankruptcy relief in 2010 in Milwaukee. That was chapter 7 case 10-30791 (Bankruptcy Court Eastern District of Wisconsin) in which Surinder Kalra and Harpreet Kalra were joint debtors. Harpreet Kalra testified at the October 30, 2025 hearing that she had not sought bankruptcy relief before. October 30, 2025 Transcript, Docket 119, p. 156. The court notes that the Debtor did not report in this case the federal Individual Taxpayer Identification Number (ITIN) that he used in the case filed in Milwaukee although the Form 121 filed in this case asked for that. He left that line blank. Docket 3.

In January of 2023, the Debtor's business partners ousted him from a concert promotion business. On October 19, 2023, the Debtor and his spouse sold a residence located at 1530 Greenbriar Lane, Schaumburg, Illinois for $405,000. They had resided at the Schaumburg home before purchasing the Roselle home. This transaction was reported in the Debtor's Statement of Financial Affairs, Docket 1, p. 36, question 18 where the Debtor reported that the proceeds of the sale of the Schaumburg real estate, $253,805, were used to purchase the Roselle property. That statement is false. The Schaumburg property was sold in 2023 after the Roselle property was purchased in 2022. The proceeds of that sale did not exist before the Roselle home was purchased. The Debtor testified, unconvincingly, that he did not review the complete bankruptcy forms before they were filed; he claims he was sent only signature pages to complete. He testified at the October 30, 2025 hearing that he reviewed various documents with his initial attorney before they were filed: the schedules, the Statement of Financial Affairs and the Form 122C, et al., described as a "worksheet that looks at your income for the 6 months right before you filed your case." October 30, 2025 Hearing Transcript ("Transcript"), Docket 119, pp. 18-19. In any event, if his lawyer filled out the forms incorrectly, he is bound by the misrepresentation as the lawyer is his agent.

At the Code section 341 meeting of creditors the Debtor testified that he used the proceeds of the sale of the Schaumburg property to purchase the Roselle residence. He was asked at the October 30, 2025 hearing herein if he recalled saying at the section 341 meeting that the proceeds of the sale of the Schaumburg property were used to purchase the Roselle property. He answered "No." Transcript, p. 36. He was asked to state what his testimony was as to the use of the proceeds of the sale of the property in Schaumburg. He answered "[f]or the new house." Transcript, p. 41. When asked if the statement that the proceeds were used to buy the

Roselle property was true, the Debtor said "That's not true." *Id.* The chapter 13 trustee's attorney played a recording of that meeting at the hearing which the Debtor listened to off the record. Transcript, p. 40. Upon listening to the recording the Debtor admitted that it refreshed his memory and that the Roselle property was purchased before the Schaumburg property was sold. *Id..*

On June 4, 2024, the Debtor, Surinder Kalra, filed this bankruptcy case seeking relief under chapter 13 of the U.S. Bankruptcy Code. He testified that he did not consult his wife regarding the bankruptcy filing. Transcript, p. 33. That may be a problem because he admitted that he works for her. The Roselle property was not noted therein as property of the Debtor or property that he had an interest in even though he purchased it and resided there before it was transferred to his spouse for no consideration at his direction as trustee of the Aragon 2022 Revocable Living Trust. Transcript, p. 21. The court notes that Schedule A/B, Docket 1, p. 10, question 1, seeks information about real estate a debtor owns or in which a debtor has an interest. The Debtor responded no to that question. Technically, it was not titled in his name at filing, but he took title to it in his name in 2022 when it was purchased and continues to live there after getting it titled in his spouse's name alone while he was mired in a dispute with his former business partners. He admitted at the hearing that he transferred the Roselle property to his wife out of fear of his creditors, his former business associates. Transcript, p. 21. His spouse testified that the transfer to her was made so that they would not lose the home to creditors. Transcript, pp. 139-40. She indicated there that their marriage would end if they lost the home. The Debtor acquired the Roselle property while he was married, potentially making it marital property in which both he and his spouse held an interest on the date this bankruptcy case was filed. He admitted that he received no consideration for the transfer of the Roselle property to his wife.

Transcript, p. 21.

The Debtor's spouse Harpreet Kalra testified at the hearing. She said that after the Debtor's former business collapsed she started a similar concert promotion concern where he works for her. She pays him whatever he needs.[2] Transcript, p. 140. The court wonders whether she pays him enough to cover the debts in issue, or just enough to get a chapter 13 plan confirmed? .

The record is bereft of any information about the profitability or value of her business, B Live Events. Harpreet also testified that she will provide some of the funds that will be sent to the chapter 13 trustee to fund the Debtor's plan, especially the $25,000 payments that will be paid over time. The court notes that the wife wants to assure the court that the payments will be made, however, she has not submitted her assets to the examination or administration of the bankruptcy court by filing for bankruptcy relief. What are her assets? What is her business worth? How much of that business' value is derived from the funds and/or business the Debtor owned before he filed for bankruptcy relief? After all, the Debtor testified that he and his wife had $2 million in 2022 when they bought the more expensive home in Roselle so that their lifestyle could reflect their financial status. Transcript, p. 86. He also testified that he once transferred $3.25 million to the business he once owned. Transcript, p. 49. And that prior to his ouster from the previous business, when Roselle was purchased, it, the business, was worth $3 million. Transcript, p. 82. The Roselle home was purchased to bring their lifestyle in line with their income. Transcript, p. 130.

---

[2] The court wonders whether she pays him enough to cover all of his debts or just enough to get a chapter 13 plan confirmed. This is an issue because her assets and the assets of her business have not been disclosed. She testified that their efforts in building were once worth $300 million. Transcript, p. 146.

The Debtor also testified that they sold the Schaumburg property in 2023 after he was ousted from the concert promotion business which was successful until the U.S. government stopped issuing visas to the artists and performers from India he featured in concerts. Transcript, p. 49.

By transferring the Roselle property to his wife to protect it from his creditors the Debtor has refused to honestly account to the bankruptcy system and his creditors about what his assets are, in spite of his duty to make such disclosures. His spouse testified that she would not stay in the marriage if he did not give the Roselle home to her. Transcript, p. 138. The court understands the Debtor's interest in preserving his marriage of 27 years but can't look the other way for that reason. Marriage represents a unity of identity that should not be manipulated as the Debtor is trying to do here by shifting major assets (the Roselle home and his portion of the Schaumburg sale proceeds) to his wife so soon after acquiring them. Since he still lives in the Roselle property, he essentially moved it from his left jacket pocket to his right jacket pocket; his creditors should not have to abandon seeking it to satisfy their debts.

The Debtor testified that the debt owed two creditors were not his personal responsibility, they were business debts. He said that his business debts were for two guaranties and that he is not responsible for corporate debts that he did not guarantee.

There is an issue about his reported income. It is uncertain because his spouse, who employs him, deducts personal and business expenses from the business' income and then his spouse decides what his income will be. There was testimony that they make money from May to November each year due to customers not wanting to attend concerts when the weather is too chilly. It is difficult to establish a monthly income amount under theses circumstances and may account for the discrepancies in their testimonies regarding his income.

The Debtor had been in the concert promotion business.  He specialized in bringing artists from India to the United States.  He put on 4 or 5 concerts a year.  Problems developed when the performers could not obtain visas to enter the United States, causing a loss of the funds invested in procuring concert halls and other costs.

On January 27, 2025 the court sustained the Chapter 13 Trustee's August 7, 2024 objection to plan confirmation at Docket 25, denying confirmation of a plan filed at Docket 2.

The objection states:

The plan has not been proposed in good faith in accordance with 11 U.S.C. § 1325(a)(3). Pursuant to debtor's testimony there was a fraudulent transfer of 1610 Marion St., Roselle, IL. The Trustee requests the debtor propose a 100% plan.

Trustee's Objection to Confirmation of Plan, Docket 25, p. 1.

**Analysis**

Section 1325 of the Bankruptcy Code requires that the court confirm a plan if nine requirements are met.  Subsection(a)(3) requires that to be confirmed a plan has to be proposed in good faith and not by any means forbidden by law.

The motion before the court, however, seeks dismissal, a one-year bar to refiling and a permanent bar to discharge, a denial of discharge pursuant to 11 U.S.C. §§ 1307(c) and 349(a).

Section 1307(c) states that upon the request of a party in interest and after notice and a hearing a chapter 13 case may be converted to chapter 7 or dismissed, whichever is in the best interests of creditors and the estate.  Grounds for conversion or dismissal include cause and several other enumerated bases, including unreasonable delay, nonpayment of fees and charges, failure to timely file a plan, failure to commence making timely plan payments and denial of confirmation.

The Seventh Circuit ruled decisively on whether a chapter 13 case had to be filed in good

-6-

faith in *In re Love*, 957 F.2d 1350 (7th Cir. 1992). *Love* involved a debtor who failed to file federal tax returns for several years while participating in or supporting a protest group that protested the payment of income taxes. That group convinced him he was exempt from having funds withheld from his pay to cover his federal tax obligations. He gave his employer withholding forms which falsely claimed he was exempt from withholding for several years. The Internal Revenue Service told the debtor's employer to stop accepting withholding forms from him. However, Love continued to submit false withholding forms to his employer.

When the IRS sent him correspondence about his tax obligations he forwarded the correspondence to the tax protest group. Love paid the protest group $50 to draft a response to the IRS. The response(s) refuted his obligation to pay taxes. When levies were initiated against his assets, Love filed a chapter 13 bankruptcy petition. He finally filed tax returns which indicated a substantial tax liability. Love reported in the bankruptcy case that he earned $27,560 a year but failed to report that he usually earned substantial amounts of overtime and vacation pay. In previous years his income was $44,303.57 and $37,720. He also failed to report at least three life insurance policies. When that failure was brought to his attention, he did not produce them or list them on an amended plan. *Id.*, at 1352-54.

The IRS objected to confirmation of Love's plan and requested that the case be dismissed. After notice and a hearing, the bankruptcy court dismissed Love's case, finding that he lacked good faith in filing the bankruptcy petition. A motion to reconsider was denied.

Chapter 13 does not specifically require that a petition be filed in good faith. However, because section 1307(c) of the Bankruptcy Code states, as noted above, that a petition may be dismissed for cause, lack of good faith is sufficient cause for dismissal of a chapter 13 case. *In re Smith*, 848 F.2d 813, 816, n. 3 (7th Cir. 1988).

-7-

The Seventh Circuit stated that because dismissal is harsh bankruptcy courts should be more reluctant to dismiss a petition under section 1307(c) for lack of good faith than to reject a plan for lack of good faith under section 1325(a). *In re Love*, 957 F.2d at 1356. Bankruptcy courts were instructed to assess the totality of the circumstances in examining the facts of each case to discern whether a debtor's efforts lack good faith.

A court has to ask of the debtor: "is he really trying to pay the creditors to the reasonable limit of his ability or is her trying to thwart them?" *In re Smith* 286 F.3d 461, 466 (7th Cir. 2002) ("At base, this inquiry comes down to a question of whether the filing is fundamentally fair.") (internal citation omitted). The most fundamental and encompassing factor is whether the debtor has dealt fairly with his creditors. Is the filing fair to creditors and is it fundamentally fair in a manner that complies with the spirit of the Code's provisions? The issue of the income paid according ot the Debtor's needs is a problem for the Debtor. His spouse decides what his income will be under circumstances where she does not have to account for how she determines that. This court questions the Debtor's wife's undisclosed income and can't be sure that she gives him enough funds.

### Factors to Consider in Examining the Totality of Circumstances Test

The Seventh Circuit noted that the similarities between good faith inquiries for filing petitions as opposed to proposing plans. *In re Love*, 957 2d., at 1357.

Where a bankruptcy court dismissed a debtor's successive bankruptcy case filing for lack of good faith, and a district court affirmed, the Second Circuit noted that a bankruptcy court has to "inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner." *In re Johnson*, 708 F.2d 865, 868 (2nd Cir.1983).

The Seventh Circuit provided a nonexclusive list of factors that are relevant to good faith filing determinations: the nature of the debt, including whether the debt would be nondischargeable in a chapter 7 case; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and creditors. *In re Love*, 957 F.2d, at 1357.

### Application of Totality of Circumstances Test

The Debtor's false statement in the Statement of Financial Affairs that the sale proceeds from the Schaumburg property were used to purchase the Roselle property shows that the Debtor did not file this case in good faith. That falsehood was in the document filed to initiate this case. The falsehood was designed to thwart questions about where the proceeds of that sale went. The other problem for the Debtor is his conduct transferring his major asset, the Roselle residence, first to a trust and then to his wife. Also, the Debtor invested his portion of the Schaumburg sale proceeds in his spouse's business, but did not receive an ownership interest therein.

Both he and his wife testified that this was done to put the Roselle residence beyond the reach of his creditors and to protect the home and their family. This is direct evidence that the Debtor acted in this regard to delay, hinder and to defraud his creditors

These issues have to be examined in the context of the totality of the circumstances, a test which is fact intensive. *In re Love*, 957 2d at 1355.

The movant has the burden to show lack of good faith warranting dismissal or conversion. *Love*, 957 F.2d at 1355 ("[T]he party moving for dismissal must demonstrate cause.") (internal citation omitted). The movant herein, the chapter 13 trustee, has shown a lack of good faith in many respects warranting dismissal.

In ruling that low-percentage chapter 13 plans do not amount to bad faith per se for plan confirmation purposes, the Court of Appeals for the D.C. Circuit noted that it would adhere to the "traditional meaning of 'good faith' as honesty of intention." *Barnes v. Whelan (In re Barnes; In re Montano,)*, 689 F.2d 193, 200 (D.C. Cir. 1982) ("For the reasons given above we adhere to the traditional meaning of 'good faith' as honesty of intention."). Debtor Kalra has not shown honesty of intention.

### Section 349 Analysis

As noted in 3 COLLIER ON BANKRUPTCY, ¶ 349.01[1] (Richard Levin & Henry J. Sommer eds., 16th ed.) section 349 of the Bankruptcy Code deals with the effect of dismissal of a bankruptcy case. Generally, dismissal is without prejudice and a debtor may receive a discharge in a later-filed case. However, the court may dismiss a case for cause and deny a debtor a discharge, preventing the debtor from obtaining a discharge of his or her debts in existence when a case gets dismissed. In the alternative the court can bar a debtor from refiling for a period of time. 11 U.S.C. § 349(a).

The court finds that due to the manner in which the Debtor transferred the Roselle property after acquiring it in his name, then to a trust and finally to his spouse, as well as the other circumstances noted herein, the chapter 13 trustee has shown cause to dismiss this case with prejudice. The discrepancies regarding his income and the misstatement that the Schaumburg residence was sold before the Roselle residence was acquired also amount to cause justifying finding that this case was not filed in good faith. In addition, the Debtor invested his portion of the proceeds of the sale of the Schaumburg property in his wife's business without receiving an ownership interest. Transcript, pp. 125-26. Failing to disclose a home worth $860.000 and using his $125,000 portion of the Schaumburg sale proceeds to invest in his

-10-

spouse's business amounts to the Debtor failing to account to the bankruptcy system and his creditors for approximately $985,000.

The debts the Debtor now owes (those disclosed and those not disclosed) will not be discharged in this case or in a future bankruptcy case.

### Findings

After assessing the totality of the circumstances the court finds that the chapter 13 trustee has satisfied his burden to show by a preponderance of the evidence that the Debtor Surinder Kalra did not file this case in good faith. He openly testified that he is trying to shield or conceal his assets from his creditors. The Debtor has not made full disclosure of assets as required by the Bankruptcy Code. The Debtor has not been forthcoming about his assets or his income. He has not shown an honest intention in dealing with his creditors or the bankruptcy estate..

### Conclusion

Bankruptcy Case 24-08259 is dismissed with prejudice for having been filed in bad faith, not in good faith. The Debtor is barred from receiving a discharge of his existing debts (disclosed and undisclosed) in this case and in any future bankruptcy case.

A separate order will issue.

Date:  January 12, 2026

ENTERED:

_____
Jacqueline P. Cox
Chief Bankruptcy Judge

-11-